COVINGTON, Chief Judge.
This appeal arises out of a dispute over the division of attorney's fees between the two sets of attorneys who at separate times represented the plaintiff in a personal injury suit. The plaintiffs claim was settled shortly before trial on the merits, with the resulting agreed-upon attorney’s fees totalling $96,000.00, the amount in dispute here. From a judgment which awarded 45 percent of $96,000.00 to the first set of attorneys, the second set of attorneys has appealed, and the first set has answered the appeal requesting an increase in the award.
*414 The undisputed facts of this case are as follows. After he was injured in an accident, plaintiff Billy Sewell was placed in contact with an attorney, Allen W. Helm, III, on the recommendation of a mutual acquaintance. At the time of this contact, Helm was an associate employed by the law firm of Riddick & Leake. Plaintiff signed a contingency fee agreement with the firm of Riddick & Leake which provided for a 40 percent attorney’s fee in the event recovery was obtained after suit was filed, and Helm was assigned to the case by the firm. This contract was executed on May 17, 1983.
On January 31, 1984, Helm left the employment of Riddick & Leake, but by agreement with that firm, was to continue to perform legal work on five of the case files which he had been assigned as an associate. The agreement between Helm and Riddick & Leake was that although he would no longer be a salaried employee, Helm would receive 20 percent of any attorney’s fee recovered in any of these cases and Riddick & Leake would receive 80 percent. However, sometime in early February, plaintiff Sewell became upset with Rid-dick & Leake over the firm’s attitude regarding the financing of plaintiff’s case and living expenses. Sewell informed Helm that he no longer wanted Riddick & Leake to handle his case, and asked Helm to inform the firm of that fact. Helm did so by phone call and a subsequent letter.
Because he was unable to finance plaintiff’s case alone, Helm then sought to introduce plaintiff to another attorney, Douglas Greenburg, who had the financial capacity to carry the case. Plaintiff signed a second contingent fee contract with Greenburg, which also provided for 40 percent of any recovery as an attorney’s fee in the event suit was filed. This contract was dated February 27, 1984, and on it, Greenburg inserted, by hand, Helm’s name. Helm testified that he was to receive half of any attorney’s fee recovered from Greenburg, who also stated he intended to split the fee with Helm.
Suit was filed on behalf of plaintiff by Helm and Greenburg. The testimony showed that suit was not filed earlier while Helm was still employed by Riddick and Leake, due to continuing medical developments in the plaintiff’s case. Riddick & Leake then intervened in plaintiff’s case seeking 80 percent of one-third of plaintiff’s demand, or a total of $444,092.81 as their share of the attorney’s fees. Subsequently, on April 16, 1984, Helm was discharged by the client and voluntarily abandoned any claim to attorney’s fees to avoid any conflict of interest. Greenburg and Sewell executed a third contingency fee contract with the same 40 percent agreement, but without Helm’s name, on April 18, 1984.
Plaintiff’s claim was ultimately settled by Greenburg & Prejeant, whose partnership had formed during the development of the case. The settlement included a lump sum cash payment and a structured annuity to the plaintiff, and the attorney’s fees were to be paid.in the form of an annuity of $1,600.00 per month for 5 years, or a total of $96,000.00.
The trial judge held that Riddick & Leake were entitled to 45 percent of $96,000.00, and Greenburg & Prejeant to 55 percent of $96,000.00. He based his decision on a finding that Helm and Greenburg intended to divide the fee in half; that Helm was an undisclosed agent of Riddick & Leake in whose favor the 50-50 split would operate even after Helm’s discharge from the case; and that Riddick & Leake were thus entitled to 80 percent of Helm’s half. The remaining 20 percent of Helm’s portion he divided evenly between Green-burg & Prejeant and Riddick & Leake because of Helm’s renunciation of his interest in any fees. The trial judge expressly rejected Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979) as relevant or applicable in this instance.
A trial judge has great discretion in setting attorney’s fees, and such an award should not be modified on appeal absent a showing of abuse of discretion. Aetna Finance Company of Baton Rouge v. Perkins, 448 So.2d 121 (La.App., 1st Cir.1984). However, we find that the trial judge committed legal error when he chose to base *415 his decision on agency principles rather than Saucier v. Hayes Dairy Products, Inc., supra. It was precisely in such a situation as this, when a client discharged his first attorney without cause and subsequently recovered damages as a result of the efforts of the second attorney, that our Supreme Court rendered its decision on rehearing in Saucier.
Writing for the Court, Justice Calogero held that only one contingency fee was to be paid by the client served by more than one attorney; “[f]urther, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.” Saucier, supra, at p. 118. These factors are listed under DR2-106, entitled “Fees for Legal Services”:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
Because these factors were not considered in the allocation of the fee below, we reverse that portion of the trial judge’s decision which fixed the shares of the attorneys. On remand, the trial judge is to consider the extensive testimony and evidence adduced previously regarding the time and efforts of the respective attorneys on plaintiffs claim in light of Saucier v. Hayes Dairy Products, Inc., and the factors in DR2-106.
The finding of the trial judge that Rid-dick & Leake were never dismissed by their client is manifestly erroneous. We find that Riddick & Leake were dismissed without cause by the plaintiff, as evidenced by the letter sent on plaintiff’s behalf to Rid-dick & Leake by Helm, and as explained by plaintiff in his deposition. See Sims v. Selvage, 499 So.2d 325 (La.App. 1st Cir. 1986) at p. 328. Further, we affirm that part of the judgment which found that $96,000.00 was the proper amount of attorney’s fees to be divided, based on the settlement of plaintiff’s claim, finding no abuse of the much discretion granted to the trial judge in this respect in light of Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987).
Costs of this appeal are to be assessed equally between the parties. All other costs are to await final disposition of this matter.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.